530 P.2d 919

STATE of Arizona, Appellee,

v.

Armida O. STEELE and Jesus M. Valenzuela, Appellants.

No. 2 CA–CR 403.

Court of Appeals of Arizona, Division 2.

Jan. 16, 1975.

Review Denied March 25, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen., by Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Albert R. Gamble, Tucson, for appellant Steele.

Thikoll, Johnston & Rosen by Leon Thikoll, Tuscon, for appellant Valenzuela.

## OPINION

HOWARD, Chief Judge.

Appellants were convicted in a trial before the court of the crime of unlawful possession of narcotics for sale.

The facts considered in the light most favorable to appellee are as follows.

Armed with a search warrant, members of the Pima County Attorney's Office Narcotic Strike Force went to the residence of appellant Armida Steele in Tucson, Arizona. Armida Steele was outside hosing down the driveway when Officers Whetten and Seng, Tucson patrolmen, approached. Whetten walked up to Miss Steele, asked her who she was and whether she resided in the house. Miss Steele identified herself and said she lived there. Officer Whetten then presented the search war-

rant to Miss Steele stating that they had a warrant to search the house. Whetten requested Miss Steele to follow him into the house and Whetten, followed by Miss Steele and Officer Seng, headed toward the house. When they reached the porch, Miss Steele shouted in a loud voice the name "Chono", some other words that were unintelligible, and the word "warrant".

Whetten immediately opened the door and, upon hearing a toilet flush, ran to the bathroom, opened the door and found appellant Valenzuela, also known as "Chono", with his hands deep in the toilet bowl. Whetten attempted to pull Valenzuela back from the bowl and a scuffle ensued. Two officers who were stationed outside at another entrance heard the struggle and responded by kicking in the door and rushing into the house. Valenzuela was subdued and a search of the house was conducted. The toilet was unbolted from the floor and inside, wrapped in plastic, was a "roll" of 30 "papers" of heroin. Armida Steele was searched by a policewoman and tucked into her waistband was $1,505 in cash. Also found in the house were 4960 pre-cut papers used in the sale of heroin and over $600 in cash.

Appellants contend error in the following aspects: (1) Failure of the trial court to suppress the evidence seized because the officers failed to ask permission to enter the house; (2) failure of the trial court to allow appellants the right to controvert the affidavit supporting the search warrant; (3) lack of speedy trial; (4) the trial court's rejection of the confession of a third person; (5) denial of the right to confront and cross-examine Officer Teitjen; (6) the dual representation of both defendants by one lawyer; and (7) the presence of an unauthorized person at the grand jury proceedings. All of appellants' contentions are without merit and we affirm.

A.R.S. § 13–1446(B) provides:

"B. An officer may break into a building, premises . . . to execute a warrant when:

1. After notice of his authority and purpose, he receives no response within a reasonable time.

2. After notice of his authority and purpose, he is refused admittance."

■ Appellant Steele was the owner of the house. Apparently appellants contend that upon reaching the door, the police officers should have stopped and asked her to open the door or should have knocked. This is "splitting hairs". The officers asked appellant Steele to follow them into the house. Her doing so gave them permission to enter and A.R.S. § 13–1446(B) was satisfied. The other officers who broke down the door when they heard a fellow officer involved in a struggle did not violate the foregoing statute. It would be absurd to require them to knock and ask for permission to enter prior to coming to the officer's rescue.

■ Appellant Steele contends that the court erred in refusing to allow her pursuant to A.R.S. § 13–1452, to controvert the grounds for probable cause upon which the search warrant was issued. The statute in question provides:

"If the grounds on which the warrant was issued are controverted, the magistrate shall proceed to take testimony relative thereto. The testimony given by each witness shall be reduced to writing and certified by the magistrate. If it appears that the property taken is not the same as that described in the warrant, or that probable cause does not exist for believing the items were subject to seizure, the magistrate shall cause the property to be restored to the person from whom it was taken . . . ."

In State v. Sabari, 109 Ariz. 553, 514 P.2d 474 (1973), the court held that if an affidavit for a search warrant is valid on its face, the court cannot go behind the affidavit on a motion to suppress. The applicability of A.R.S. § 13–1452 was not raised nor discussed in *Sabari*.

A.R.S. § 13–1452 was adopted from California, West's Ann.Pen.Code §§ 1539, 1540.

In California the truthfulness of the affidavit may be attacked and the evidence suppressed under the previously cited California statutes. Theodor v. Superior Court, 8 Cal.3d 77, 104 Cal.Rptr. 226, 501 P.2d 234 (1972). Assuming, but not deciding that California's construction of the statute is correct, the trial court in the case at bench did not err.

The affidavit in question recited, inter alia, that one Chip Canales, who was arrested for possession of 32 "papers" of heroin stated that he earned money to support his habit by selling heroin for appellant Valenzuela and that he had personally been supplied with heroin by said appellant. Appellant Steele made an offer of proof through Canales who denied making any such statements. According to the affidavit, Canales also stated that Augustine Ortiz was also selling for appellant Valenzuela. The testimony of Ortiz was to the effect that he never sold heroin for Valenzuela and never saw heroin in the residence of Valenzuela. The offers of proof from both witnesses were rejected by the trial court.

Whether Canales made the statements attributed to him are immaterial in view of the rest of the affidavit. It is based, inter alia, on the personal observations of the affiant, Officer Teitjen, and the observations of an informant, including a controlled buy of heroin from Valenzuela by the informant under the affiant's supervision. The proffered testimony was peripheral and even without it the affidavit was sufficient. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) ; State v. Sabari, supra.

Appellant Steele was not tried until 142 days after arraignment. Since she was not in custody, Rule 8.2(c), Rules of Criminal Procedure, 17 A.R.S., required that she be brought to trial within 90 days from the date of arraignment which was on November 13, 1973. The 90-day period expired on February 11, 1974, but the trial did not take place until April 4, 1974.

On December 13, 1973, the State obtained an order from the superior court staying the proceedings pending our determination of a special action. There was no opposition to the stay. We released our decision in the special action proceedings on January 14, 1974. State v. Fenton, 21 Ariz.App. 193, 517 P.2d 1086. Our order and mandate issued on January 31, 1974.

On February 11, 1974, Valenzuela obtained a stay of proceedings from the Chief Justice of the Arizona Supreme Court in order to petition that court for special action relief. The Court declined to accept jurisdiction of the petition and vacated the stay on March 5, 1974.

Appellant Valenzuela was in custody and under Rule 8.2(b) had to be brought to trial within 60 days from his arraignment. When the 60-day period elapsed, Valenzuela moved for release from custody under Rule 8.6(a). This motion was granted and he was released. Rule 8.6(a) also provides that upon release the provisions of Rule 8.-2(c) shall apply.

■ Rule 8.4(a) provides that delays occasioned by or on behalf of the defendant shall be excluded from the time period. It is clear that the delay caused by Valenzuela is to be excluded from the time computations. Whether this delay should be attributed to appellant Steele and whether the delay occasioned by the State's special action, need not be answered since in both instances the superior court proceedings were stayed. No trial of either defendant could have taken place during the stays. Rule 8.4 does not speak of periods during which proceedings are stayed for the reason that it is obvious that nothing can take place during such periods. When the stay periods are excluded, both appellants were brought to trial within 90 days from the date of arraignment. The trial court did not err in denying their motions to dismiss for lack of a speedy trial.

■ Appellant Steele contends that the court erred in not acquitting her because

of the written "confession" by Canales which was admitted into evidence. We do not agree. Canales was a friend of appellants and a narcotics addict. The court did not have to believe him.

■ Appellant Steele claims the court erred by denying her the right to cross-examine Officer Teitjen. Appellant Steele never served the officer with a subpoena. Instead, a subpoena was served on the county attorney. It is Steele's contention that this was good enough and the county attorney should have produced Officer Teitjen at the trial for cross-examination. This contention is without merit. There was no denial of confrontation. The State need not call all the witnesses. There was no evidence that the witness was evading process.

■ On the issue of conflict of interest, appellant Valenzuela's position appears to be that since one attorney represented both at the trial effective assistance of counsel was denied since each one was prevented from putting the blame on the other. At trial neither sought to blame the other. Their position was that they knew nothing about the narcotics. Appellant Valenzuela's argument is sheer sophistry and without merit.

■ The prosecutor who presented the evidence to the grand jury was present when the raid was made on the home of appellant Steele. We do not agree with the contention that since the prosecutor had *witnessed* the events, he could not act as a prosecutor at the grand jury proceedings. Rule 12.5, Rules of Criminal Procedure, provides:

> "No person other than the witness under examination, counsel for the witness if the witness is a person under investigation by the grand jury, prosecutors authorized to present evidence to the grand jury, the reporter, and the interpreter, if any, shall be present during sessions of the grand jury. No person other than the grand jurors shall be present during their deliberation and voting."

While he could not testify as a witness and then act as the prosecutor at the grand jury proceedings, the mere fact that the prosecutor witnessed some of the events does not disqualify him from acting as a prosecutor as long as he limits himself to that role only.

Affirmed.

HATHAWAY and KRUCKER, JJ., concur.